**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) SUSAN C. WILLARD, D.O. | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | CASE NO. 16-cv-00677-CVE-TLW |
| | ) | |
| 1) AHS OKLAHOMA PHYSICIAN GROUP, LLC d/b/a | ) | JURY TRIAL DEMANDED |
| UTICA PARK CLINIC, | ) | ATTORNEY LIEN CLAIMED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Susan C. Willard, D.O., for her claims against Defendant, alleges and states as follows:

### I. JURISDICTION AND VENUE

1. This is an action for age discrimination under the *Age Discrimination in Employment Act* of 1967 ("ADEA") as amended, 29 U.S.C. § 621, *et. seq*. and 42 U.S.C. § 2000e, *et. seq*. (Title VII), for retaliation under the ADEA, as amended 29 U.S.C. § § 623(d), violation of the *Oklahoma Anti-discrimination Act*, 25 O.S. § 1301, *et. seq.,* and the pendent state claim of Intentional Interference with Contract, Business Relations and Prospective Business Advantage.

2. Jurisdiction lies in this Court based upon 29 U.S.C. § 626(b), and 28 U.S.C. § 1337 to enforce the provisions of the ADEA.

3. Venue lies in this Court as the unlawful employment practices described below were committed within the State of Oklahoma, in the County of Tulsa, which lies in the United States District for the Northern District of Oklahoma under 28 U.S.C. § 1391(b).

4. Plaintiff timely filed a Complaint with Equal Employment Opportunity Commission, asserting the claims asserted herein, which agency was unable to resolve the controversy and which issued a Right to Sue letter to Plaintiff dated August 17, 2016 and received on August 19, 2016, advising that Plaintiff had 90 days from the receipt of that letter to file her claims in federal court.

5. This Court also has jurisdiction and venue over the pendent Oklahoma State claim for Defendant's violation of the *Oklahoma Anti-discrimination Act*, 25 O.S. § 1301, *et. seq*. and Intentional Interference with Contract, Business Relations and Prospective Business Advantage.

## II.   PARTIES

6. Plaintiff, Susan C. Willard, D.O. ("Dr. Willard"), is a citizen of the United States and resident of Tulsa County, Oklahoma, City of Tulsa. At all times material to this action, Dr. Willard was over 40 years of age.

7. Defendant AHS Oklahoma Physician Group, LLC, d/b/a Utica Park Clinic is a Delaware Corporation doing business in the State of Oklahoma, County of Tulsa as Utica Park Clinic ("Defendant"). At all times material to this action, Defendant employed in excess of 500 people and was an "employer" within the meaning of 29 U.S.C. § 630(b).

## III.   OPERATIVE FACTS

8. Plaintiff hereby incorporates the above paragraphs as though fully set forth herein.

9. Dr. Susan Willard was employed as a physician with the Utica Park Clinic (formerly SouthCrest) for over nine (9) years.

10. In 2015, Dr. Willard was paid approximately $297,500.00 annually for her services as a medical provider. She was under contract with Utica Park Clinic until July of 2017.

11. In 2014, Dr. Willard turned 61 years of age.

12. At that time, Jim Kaltenbacher, the CEO of Utica Park Clinic, met with Dr. Willard and informed her that most physicians "her age" were retiring due to the new electronic medical record keeping system. He inquired whether Dr. Willard would be retiring before the expiration of the two (2) years remaining on her contract. Dr. Willard informed Mr. Kaltenbacher that she did not intend to retire.

13. Mr. Kaltenbacher also commented to Dr. Willard about her age and gender and inferred that she did not have to continue working due to the income of her husband.

14. In or around August of 2014, Utica Park Clinic hired a new physician to be Dr. Willard's "partner" at the same office location. The new hire, Dr. Sarah Andrews, was 31 years of age.

15. In or around May of 2015, Dr. Andrews informed the office staff that she had met with Utica Park administration and that "changes were going to be made" because the administration did not feel that it made sense for Utica Park Clinic to continue to support Dr. Willard, who "would be retiring," when they should be supporting Dr. Andrews who was much younger and would be there for the "long haul."

16. Upon information and belief, about this same time, the Utica Park Administrative Director, Ryan Oss (age 28) began providing inordinate assistance and attention to Dr. Andrews at the expense and neglect of Dr. Willard and the staff. Dr. Willard believed this to be in violation of company policies.

17. In or around June of 2015, Dr. Willard met with Mr. Kaltenbacher and the Utica Park Clinic medical director, Dr. Jeff Galles, regarding the age discrimination comments and the possible company policy violations.

18. During that meeting, Mr. Kaltenbacher again inquired if Dr. Willard would be retiring before her contract ran out.

19. In the same meeting, Mr. Kaltenbacher and Dr. Galles falsely accused Dr. Willard of having sub-par patient numbers. This was patently untrue as Dr. Willard's patient numbers were among the highest in the entire Utica Park Clinic physician group.

20. Shortly thereafter, Dr. Andrews stated to her own nurse the same thing she had stated to the office staff earlier, *i.e.*, that changes were about to be made because Utica Park wanted to invest in a younger physician such as Dr. Andrews as opposed to a doctor in her 60's -- meaning Dr. Willard.

21. Shortly after this, Mr. Kaltenbacher asked Dr. Willard to move to a new office location from the one originally designed for her and in which she had practiced successfully for over 9 years. Dr. Willard inquired why she was being asked to move and was told it was because Dr. Andrews did not want to office with her.

22. When Dr. Willard asked if the move was related to her age, Mr. Kaltenbacher became angry and shouted that maybe it was time for Dr. Willard to part ways with Utica Park Clinic.

23. Dr. Willard reported this to Kevin Gross, the CEO of AHS Oklahoma Physician Group, who owns Utica Park Clinic. She also filed an internal ethics complaint on Friday morning, August 21, 2015.

24. Just before noon on the same day, Dr. Willard received a notice of termination letter from Mr. Kaltenbacher. The termination letter did not cite any cause for the termination.

25. On August 23, 2015, Dr. Willard met with Kevin Gross who told her that the termination was for "productivity and space allocation." Dr. Willard was told to vacate her office on or before October 9, 2015.

26. The reasons given for Dr. Willard's termination were false and pretextual as Dr. Willard was among the most productive physicians in the entire physicians' group and there was no issue with "space." Dr. Willard had been in the space designed for her for 9 years and there was room to even add additional physicians.

27. Utica Park clinic replaced Dr. Willard's practice with Dr. Andrews, age 32, and an additional Nurse Practitioner named Claire Nordstrom, age 34.

28. Upon information and belief, and in clear retaliation for raising complaints about age discrimination and related company policy violations, Defendants engaged in unlawful actions against Dr. Willard, including but not limited to: a) unlawfully interfering with her doctor-patient relationships by falsely telling her patients that she had "retired" from the practice of medicine; b) interfering with her ability to contractually sub-lease new office space for no reason other than to impede her ability to carry on her practice after being unlawfully terminated by Defendant; and c) refusing to forward Dr. Willard's patient's complete charts to her in order to impede her ability to continue caring for her patients.

## **CAUSES OF ACTION IV**

### **COUNT I**

29. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

30. Age discrimination is contrary to the ADEA and the OADA.

31. As shown above, Dr. Willard was discriminated against and terminated by Defendant because of her age in violation of the law.

32. As shown above, Dr. Willard was replaced by another physician and a nurse practitioner both of whom are in their 30's.

33. Under the ADEA, Dr. Willard is entitled to compensation for her lost earnings, past, present, and future, and for the value of the benefits associated with such earnings -- all in an amount in excess of $75,000.00.

34. At the time, Defendant was aware of both the ADEA and OADA laws and acted willfully and with reckless disregard of the law in depriving Dr. Willard of her rights as set forth above.

35. Because the actions of Defendant was willful, malicious, and/or in reckless disregard for Dr. Willard's federally and state protected rights, Plaintiff is entitled to liquidated damages in an amount equal to her wage and benefit loss through the time of her trial under the ADEA claim, and punitive damages -- all in an amount in excess of $75,000.00.

36. Additionally, Dr. Willard asserts that the OADA damages caps are unconstitutional under Oklahoma's prohibition against special laws, and that she is entitled to the full range of normal tort damages, including punitive damages. Plaintiff also asserts that she is entitled to dignity harm damages under the ADEA's anti-retaliatory provisions -- all in an amount in excess of $75,000.00.

37. Dr. Willard is also entitled to an award of attorney fees and costs, and all other damages available under applicable laws and statutes.

## COUNT II

38. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

39. In addition to her most recent filing with the EEOC, Dr. Willard previously filed age discrimination and related company policy violation complaints internally and pursuant to company policies.

40. When she filed her complaints, Dr. Willard reasonably believed that she had been unlawfully subjected to age discrimination as set forth above.

41. Subsequent to her complaints, Defendant, *inter alia*, falsely accused Dr. Willard as "difficult to be a partner with" and having sub-par patient numbers. Defendant also imposed unreasonable and untenable conditions to her continued employment such as relocating to a new office (under the guise of space allocation issues) despite that fact the office she was in for over 9 years was designed for her and provided ample space for staff and even another physician.

42. Additionally, after filing her complaints, Defendant falsely informed Dr. Willard's patients that she had "retired" from the practice of medicine, and impeded her ability to enter into a sub-lease contract for new office space by specifically prohibiting the lessee from sub-leasing to Dr. Willard. Defendant also refused to forward Dr. Willard's patient's complete charts to her to impede her ability to continue to provide medical care to these patients.

43. Such conduct constitutes retaliation in connection with Dr. Willard's complaints and is actionable under both the ADEA and the OADA.

44. At the time, Defendant was aware of both the ADEA and OADA laws and acted willfully and with reckless disregard of the law in depriving Dr. Willard of her rights in retaliation for asserting complaints as set forth above.

45. Accordingly, Dr. Willard is entitled to damages in excess of $75,000.00 under all applicable damages provisions of both the ADEA and OADA and punitive damages, attorney fees, and costs.

## COUNT III

46. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

47. Dr. Willard had physician-patient relationships with long standing patients.

48. Defendant was aware of these relationships, or reasonably should have known of these relationships, and intentionally interfered with such relationships in an effort to destroy them by falsely telling said patients that Dr. Willard had "retired" from the practice of medicine. Defendants knew this to be untrue and made such false statements in an effort to deprive Dr. Willard of the business and income related to such long standing physician-patient relationships.

49. Additionally, Dr. Willard had entered into an agreement to sub-lease office space to carry on her practice after being unlawfully terminated by Defendant.

50. Defendant knew or reasonably should have known of the sub-lease agreement and unlawfully interfered with said agreement by specifically prohibiting the lessee from entering into the sub-lease agreement with Dr. Willard for no reason other than to impede Dr. Willard's ability to continue practicing medicine and earn an income.

51. Defendant's interference was intentional, used unfair and improper means, and/or improperly induced third parties to interfere, and was done with malice and/or with reckless disregard.

52. As a result, Dr. Willard has suffered damages in excess of $75,000.00 and is entitled to punitive damages in excess of $75,000.00.

**PRAYER FOR RELIEF**

Plaintiff, Dr. Willard, respectfully requests this Court enter judgment in her favor and against the Defendant and grant her all compensatory damages suffered together with punitive damages, liquidated damages, attorneys' fees, costs, and interest, and such other legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

By: _/s/Michael L. Barkett
Michael L. Barkett, OBA #16171
Cassie M. Barkett, OBA #18658
The Barkett Law Firm, PLLC
1408 S. Harvard Avenue
Tulsa, OK   74112
(918) 582-6900 (Telephone)
(918) 582-6907 (Facsimile)
mbarkett@barkettlaw.net
cbarkett@barkettlaw.net